[Cite as *State v. Chapman*, 2011-Ohio-4642.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96580**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LITRELL CHAPMAN

DEFENDANT-APPELLANT

**JUDGMENT:
DISMISSED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-345622

**BEFORE:**   Rocco, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   September 15, 2011

-i-

**FOR APPELLANT**

Litrell Chapman, pro se
Inmate No. 334-875
Trumbull Correctional Institution
P.O. Box 901
Leavittsburg, Ohio   44430

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Diane Smilanick
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶ 1}  Defendant-appellant Litrell Chapman appeals from the trial court's denial of his "notice for [an] order on newly-discovered evidence."

{¶ 2}  Chapman presents one assignment of error, claiming that the trial court abused its discretion.   Since the trial court's order is not one from which an appeal lies, this case is dismissed.

{¶ 3}  This court first reviewed Chapman's case in *State v. Chapman* (July 13, 1998), Cuyahoga App. No. 73292 ("*Chapman I*"), setting forth the facts surrounding his convictions as follows:

{¶ 4} "The events here began when Litrell Chapman, Alonzo Quinnie, and Willis McNeal twice attempted to steal money during the early morning hours of May 30, 1996. In connection with the first attempt, Chapman borrowed a Smith & Wesson .38 caliber snub-nosed revolver from Michael Lauderdale, which belonged to Clinton Robinson, and he, Quinnie, and McNeal stole a safe from Chapman's cousin. After meeting Robinson, Timothy Larkin, and Aisha Sparks at the home of Chapman's father, Chapman broke into the safe but found only pennies and some marijuana seeds; as a result of this failed attempt to obtain cash, Chapman suggested that he, Quinnie, and McNeal rob David White. At this point, Chapman then gave McNeal a sawed-off shotgun, and the three men drove to White's apartment where, after unscrewing the bulb in a light fixture above the front door, they kicked open the apartment and kitchen doors, and, as White confronted Chapman in the kitchen, Chapman shot him in the upper left part of his chest near his heart at close range. Following a quick, but unsuccessful, search of the apartment for 'big money,' Chapman ran to his car and drove to his father's house, where he met Aisha Sparks and allegedly went to sleep for the night. McNeal and Quinnie then ran from White's apartment to McNeal's car and drove away.

{¶ 5} "White's girlfriend, Loretta Taylor, who had been hiding in the bedroom closet during the robbery, telephoned police and, upon their investigation, she identified someone other than Chapman as the man who searched her bedroom. The following week, Chapman attended White's funeral and bragged to Timothy Larkin about having committed his first murder; he also asked Aisha Sparks to provide him with an alibi. Cleveland police detectives, who continued this investigation, eventually arrested Chapman in November, 1996, based in part on information provided to them by Clinton Robinson and Timothy Larkin; the grand jury subsequently indicted Chapman for aggravated murder, aggravated burglary, and aggravated robbery. The court conducted a jury trial which resulted in guilty verdicts against Chapman on all three counts."

{¶ 6} After this court reviewed Chapman's seven assignments of error, although his convictions were affirmed, this court determined he was entitled to be resentenced; therefore, Chapman's case was remanded for that purpose. The trial court complied with the directive on July 29, 1998. Subsequently, the Ohio Supreme Court denied Chapman's motion to file a delayed appeal from this court's decision in *Chapman I*.[1]

---

[1]*State v. Chapman* (1999), 87 Ohio St.3d 1419, 717 N.E.2d 1106.

**{¶ 7}** On January 30, 2001 Chapman filed his first Crim.R. 33 motion for a new trial. Since the rule required new trial motions to be filed within one hundred twenty days "after the verdict is rendered," Chapman explained that his application was untimely because he neither knew how to file his motion in a timely manner, nor had his trial transcripts within that time frame.[2] Chapman presented nine "errors of law" that he claimed entitled him to a new trial. In his seventh, he asserted that one of the state's witnesses had been "coerced" to testify. On February 5, 2001, the trial court denied his motion.[3]

**{¶ 8}** Chapman sought to appeal from the trial court's decision. However, his appeal was dismissed as untimely filed. *State v. Chapman*, Cuyahoga App. No. 79812, 2002-Ohio-1081 ("*Chapman II*"). Once again, the Ohio Supreme Court declined to accept his request to file a delayed appeal from this court's decision.[4]

**{¶ 9}** In the meantime, on May 7, 2001 Chapman filed a motion for postconviction relief. He argued that he was entitled to relief because he had

---

[2]Chapman alleged he received the transcripts on January 22, 1998, but failed to explain the reason it took him another three years to file his motion.

[3]On March 8, 2001, after the state filed a brief in opposition to Chapman's first motion, the trial court issued a second journal entry that denied Chapman's motion.

discovered by speaking with a co-defendant that two of the state's witnesses, viz., Timothy Larkin and Clinton Robinson, had offered "perjured" testimony at Chapman's trial.

{¶ 10} The state requested the trial court to dismiss Chapman's petition, pointing out that the petition was untimely. On May 18, 2001, the trial court issued an order that "overruled" Chapman's petition.[5] Chapman did not appeal the trial court's order.

{¶ 11} On December 8, 2006, Chapman filed a "request for leave to file [a] delayed motion for a new trial." Chapman claimed in his attached affidavit that both of his co-defendants provided false testimony at his trial. Chapman attached several other documents, including affidavits of his co-defendant McNeal and a friend, Ralph Tidmore; in his affidavit, McNeal claimed he had been "coerce[d]" into making untrue statements, and Tidmore asserted Chapman's other co-defendant told him "they lied on Trell."

{¶ 12} The state filed a brief in opposition to Chapman's request. On January 16, 2007, the trial court issued an order denying Chapman's request

---

[4]*State v. Chapman*, 96 Ohio St.3d 1487, 2002-Ohio-4478, 774 N.E.2d 762.

[5]The record reflects the state re-filed its request on June 14, 2001, and the trial court "granted" the state's request on June 22, 2001.

for leave to file a delayed new trial motion.[6] This court subsequently dismissed pursuant to R.C. 2505.02 Chapman's attempt to appeal from the trial court's order.[7]

{¶ 13} Although Chapman applied in June 2007 to the trial court for a "final order," the trial court denied his request. Chapman attempted to appeal that decision, but his appeal was dismissed;[8] the supreme court eventually declined jurisdiction to consider that case.

{¶ 14} On February 11, 2011, Chapman filed a "notice for [an] order on newly discovered evidence" pursuant to "the operation of Criminal Rule 33." In his supporting brief, Chapman requested the court to "preserve the newly discovered evidence for [the] filing of a proper motion for leave to order a new trial * * * ." Chapman also sought a hearing on this matter. Chapman attached, in pertinent part, a copy of an undated affidavit from McNeal; once again, McNeal claimed he lied at Chapman's trial.

{¶ 15} On February 24, 2011, the trial court issued a judgment entry that denied Chapman's "notice," mistakenly referring to Chapman's pleading

---

[6]The record reflects the trial court re-issued the order on January 23, 2007.

[7]App. No. 89416.

[8]App. No. 90239.

as a "motion for a new trial." Chapman filed the instant appeal from that order.

{¶ 16} Chapman sets forth a single assignment of error, asserting that the trial court abused its discretion, but this court cannot address his argument, because it lacks jurisdiction to do so.

{¶ 17} Article IV, Section 3(B)(2) of the Ohio Constitution limits appellate court jurisdiction to the review of final judgments. For a judgment to be final and appealable it must satisfy R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Hitchings v. Weese*, 77 Ohio St.3d 390, 1997-Ohio-290, 674 N.E.2d 688. This court, therefore, must dismiss an appeal that is not taken from a final appealable order.

{¶ 18} R.C. 2505.02 provides in pertinent part as follows:

{¶ 19} "(A) As used in this section:

{¶ 20} "(1) 'Substantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.

{¶ 21} "(2) 'Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was denoted as an action at law or a suit in equity.

{¶ 22} "(3) 'Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, [or] suppression of evidence, * * *.

{¶ 23} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 24} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

{¶ 25} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

{¶ 26} "(3) An order that vacates or sets aside a judgment or grants a new trial;

{¶ 27} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:

{¶ 28} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

{¶ 29} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.* * * "

**{¶ 30}** The trial court's denial of Chapman's "notice for an order on newly discovered evidence" meets none of the foregoing definitions of a "final order."   Cf., *State v. Gray*, Cuyahoga App. No. 92646, 2010-Ohio-11; *State v. Moore*, Allen App. No. 1-08-27, 2008-Ohio-6751.   To the extent Chapman had a "substantial right" to the preservation of evidence, in *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, the United States Supreme Court held that, whatever duty the United States Constitution imposes on the states to preserve evidence, the duty is limited.[9] Obviously, the evidence must be in the state's possession.   See, e.g., *State v. Moore* (Oct. 27, 1986), Butler App. No. CA 85-04-035.   In this case, Chapman did not make clear what evidence he sought to be preserved.   The evidence Chapman indicated, however, to the extent he did, either was in his possession or is a matter of public record.

**{¶ 31}** Since the trial court's order was not a final appealable order, this case is dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[9]The evidence itself must meet a standard of "constitutional materiality," i.e., it must possess an apparent exculpatory value, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR